UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAN BROWN,

        Plaintiff,

v.                                          Case No. 1:18-cv-545

                                                Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant,

_____/

## OPINION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

        Plaintiff alleged a disability onset date of June 14, 2012. PageID.597. Plaintiff identified his disabling conditions as "[l]ower/upper back pain, right shoulder, knee pain." PageID.601. Prior to applying for DIB and SSI, plaintiff completed a GED and worked as a rough carpenter, trim carpenter, construction worker, and furniture assembler. PageID.45-46, 602.

        As explained by the administrative law judge (ALJ) this matter on remand from the Appeals Council:

> In its remand order, the Appeals Council indicated that, with the request for review, the claimant submitted new evidence material and related to the period before the Administrative Law Judge. The Appeals Council directed the undersigned to obtain additional evidence concerning the claimant's impairments in order to complete the administrative record, to give further consideration of the newly submitted evidence, to give further consideration to the claimant's maximum residual functional capacity, and to further evaluate the claimant's subjective complaints (Exhibit 6A).

PageID.32.    On remand from the Appeals Council, the ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 19, 2017.  PageID.32-48.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.    LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).  A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d

716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 14, 2012, and that he met the insured status of the Social Security Act through June 30, 2016. PageID.34. At the second step, the ALJ found that plaintiff had severe impairments of: degenerative disc disease [status-post discectomy L4-L5 and L5-S1 (in approximately 2006)]; a depressive disorder, not otherwise specified; cluster B personality traits; a torn medial meniscus of the right knee; mild degenerative joint disease of the hips; degenerative joint disease of the right shoulder with tendinopathy of the rotator cuff; a rotator cuff tear and slap lesion of the right shoulder; and mild degenerative disc disease of the cervical spine. PageID.35.

At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.35. The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) of the Regulations. The claimant is able to lift and carry up to 10 pounds, to sit for up to four hours total in an eight-hour workday and for one hour at a time, to stand for up to two hours total in an eight-hour workday and for one hour at a time, and to walk for up to 2 hours total in an eight-hour workday and for one hour at one time. No cane is required to aid ambulation. The claimant can occasionally reach, frequently handle, finger and feel and occasionally push and pull. He can occasionally operate foot controls bilaterally. He can occasionally climb ramps and stairs, balance, stoop and crouch, but never climb ladders, ropes, or scaffold, and never kneel or crawl. He can have occasional exposure to moving mechanical parts, and can occasionally operate motor vehicles. He can have occasional exposure to humidity, wetness, dust, odors, fumes, gases and areas of poor ventilation. He can also have only occasional

exposure to heat and no exposure to extreme cold, vibration and unprotected heights. He can have no exposure to greater than moderate noise levels. He is also limited to doing simple routine work with a SVP of one or two and that involves working in a low-stress work environment with no specific production quotas or fast pace production quotas or requirements.

PageID.37-38.  The ALJ also found that plaintiff was unable to perform any of his past relevant work.  PageID.45.

At the fifth step, the ALJ found that plaintiff could perform a limited range of sedentary work in the national economy.  PageID.46-47.  Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy including office helper (25,000 jobs), mail clerk (5,000 jobs), and information clerk (20,000 jobs).  PageID.47. Accordingly, the ALJ found that plaintiff has not been under a disability, as defined in the Social Security Act, from June 4, 2012 (the alleged onset date) through April 19, 2017 (the date of the decision).  PageID.48.

## III.    DISCUSSION

Plaintiff set forth two issues on appeal:

**A.    The ALJ ignored the vocational expert's (VE's) testimony that frequent reaching was required for the jobs listed at step five used by the ALJ to deny benefits to plaintiff when the ALJ's residual functional capacity (RFC) determination was limited to occasional reaching.**

Plaintiff contends that the ALJ erred by finding that he could do jobs which involved only "occasional reaching", because the VE testified that plaintiff needed the ability to perform "frequent reaching" to perform the identified jobs.  As discussed, plaintiff's RFC included the limitations that he "can occasionally reach, frequently handle, finger and feel and occasionally push and pull."  PageID.37.  While plaintiff seeks reversal based on the ALJ's failure to follow the VE's testimony, he does not address that extensive testimony in any detail.  Nevertheless, the Court

cannot find support for the ALJ's decision reached at Step 5 of the sequential evaluation, *i.e.*, that plaintiff could perform other work in the national economy consisting of the representative occupations of office helper (25,000 jobs), mail clerk (5,000 jobs), and information clerk (20,000 jobs). PageID.47.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994).

The record reflects that the ALJ posed four hypothetical questions to the VE at the fifth step of the sequential process. PageID.177-182. Then, plaintiff's representative posed additional questions to the VE. PageID.182-184. The ALJ posed more questions (PageID.185-187), followed by plaintiff's representative (PageID.187-188), followed by the ALJ (PageID.188-189). At no time throughout this colloquy did the VE explicitly identify the 50,000 jobs cited by the ALJ. The VE appears to have identified 60,000 jobs (the same job titles as the ALJ, but including 15,000 mail clerk jobs rather than 5,000 mail clerk jobs as set forth in the ALJ's decision) (PageID.186-187). However, the VE classified these jobs as a "very limited range of light work,"

PageID.187, which was not consistent with the RFC, which limited plaintiff to sedentary work. PageID.37-38. As a follow up, the VE stated that if the weight limit was restricted to 10 pounds (*i.e.*, sedentary work as set forth in the RFC), the three identified jobs (office helper, mail clerk and office clerk) would all involve "frequent" reaching (PageID.187-188), with the additional caveat "of how you define reaching" (PageID.188).

Based on this record, it is unclear as to how the ALJ reached the conclusion that plaintiff could perform the 50,000 representative sedentary jobs as set forth in the decision and whether plaintiff could perform any of those jobs which appear to require "frequent" reaching. In this regard, it is unclear exactly how the VE defined "reaching" with respect to those jobs. An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Here, the Court cannot trace that path. Accordingly, this matter will be reversed and remanded pursuant to sentence four of § 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the vocational evidence to determine if other work exists in the national economy that plaintiff can perform.

**B.    The ALJ failed to properly weigh the medical source opinion evidence under the standards set forth at 20 C.F.R. § 404.1527.**

Plaintiff contends that the substantial evidence does not support the ALJ's decision to assign "reduced weight" to the opinion of William Ahrens, M.D. Plaintiff's Brief (ECF No. 9, PageID.1499). A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127

F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, the ALJ addressed Dr. Ahrens' opinions as follows:

The undersigned assigns reduced weight to the April 2013 opinion statement of treatment William Ahrens, MD, a treating physician of the claimant, in Exhibit 4F, in view of the supportability of that opinion and its consistency with the record as a whole. In this opinion, Dr. Ahrens opined that the claimant could sit

sometimes [stated as one to two hours in an eight-hour workday], stand and walk sometimes, lift up to 10 pounds sometimes, and bend sometimes. The claimant was never able to lift up to 25 pounds (or up to 50 pounds or over 50 pounds) and he could never stoop. In a series of checked boxes, Dr. Ahrens opined that the claimant would have serious limitations as to pace and concentration would need a sit-stand option, as symptoms dictate, at will; and due to the claimant's symptoms, would likely miss three days or more of work and be tardy three or more days per month. The claimant was best suited for part-time work, as opposed to full-time work; would need breaks from work as symptoms dictate; and the combined effect of the claimant's impairments on his activities was greater than the effect of each impairment considered separately. [The diagnosed conditions resulting in limitations were listed as chronic low back pain, spinal stenosis, and degenerative disc disease; these conditions were permanent].

The undersigned assigns reduced weight to Dr. Ahrens' opinion in Exhibit 4F for several reasons. Other than the listed conditions, the statement contains no other narrative explanation or rationale for the proposed limitations. There is no explanation of the degree or intensity of any "serious limitations as to pace and concentration" or why the claimant would require a sit-stand option at will, or how the physician arrived at the frequency of absenteeism or tardiness. The item that compares part-time and full-time work is imprecise and vague. The proposed frequency and duration of "breaks from work as symptoms dictate" is also imprecise, vague, and unexplained.

On August 20, 2014, Dr. Ahrens opined that the claimant was able to stand and/or walk for less than two hours in an eight-hour workday and sit for less than about six hours in an eight-hour workday. The claimant could lift up to ten pounds occasionally (less than 1/3 of the day), and perform occasional fingering (fine manipulation). The claimant could never lift up to 20 pounds, never climb (ramps, stairs, ladders, ropes, and scaffolds), balance, stoop, kneel, crouch, crawl, or handle (gross manipulation). The use of a hand-held assistive device was necessary for ambulation. A sit-stand option was necessary, and the claimant had side effects or symptoms resulting from medication or treatment. The claimant would have serious limitations maintaining focus and concentration, he would need unscheduled breaks from work as symptoms dictate, and he would be off task (affecting productivity) for 30% or more of the workday.

I assign Dr. Ahrens opinion in Exhibit 7F reduced weight because it is not well supported or consistent with the treatment record. He concluded in 7F that the claimant requires a hand held device for ambulation, but the claimant testified he does not use a cane very much and he can walk for 1-2 miles while Ahrens' opinion noted that he could stand and/or walk for less than 2 hours total in an eight-hour workday. Dr. Ahrens' opinion and the claimant reported use of a cane as well as the claimant's reported standing and walking activities are widely inconsistent. Moreover, Dr. Ahrens' own treatment notes fail to establish the need for assisted ambulation or even the observation of the claimant using such a device. The

claimant testified that he could lift 15 pounds or more, and then changed it to 10 pounds being more realistic. The undersigned does not think the claimant is as limited as he has alleged and certainly not as limited as Dr. Ahrens concluded in his varied opinions. The claimant also testified that he could sit for several hours in a recliner and maybe less in a regular chair. The claimant also testified to being able to walk for 1-2 miles with some pain and stated that he participated in Pokemon Go game, which reasonably requires physical activity including walking and endurance.

Exhibit 17F/3-4 is a duplicate of Exhibit 7F, which the undersigned discussed above. At Exhibit 17F/1-2, there is another opinion from Dr. Ahrens dated May 27, 2016. On that date, Dr. Ahrens believed that the claimant could sit and stand/ walk sometimes [continuously up to two hours or occasionally up to six hours] and lift up to ten pounds sometimes. The claimant was able to lift between 11 and 25 pounds rarely [less than two hours out of an eight-hour workday [sic], and never lift 26-50 pounds or over 50 pounds. The claimant could rarely bend and reach over shoulder and could never squat, crawl, or kneel. He would have severe limitations as to pace and concentration (non-productive 15% or more of the time), would need frequent and unscheduled breaks from work, likely miss three or more days per month, and would likely spend at least one hour per eight-hour period lying down. The claimant had a complete inability to stoop without causing undue pain and/or injury. He did not need to elevate his feet at or above waist-level for at least 30 minutes during an eight-hour period. I assign reduced weight to the May 2016 opinion of Dr. Ahrens because it lacks consistency and supportability. Dr. Ahrens again offered the proposed limitations on the check-box form without further explanation. It is worth noting that, with proposed lifting of 11-25 pounds and with standing and/or walking continuously up to two hours or occasionally up to six hours, this opinion exceeds the parameters of Finding #5 of this decision. Further, sedentary work requires restricted postural functions, including stooping [SSR 96-9p].

PageID.43-44.

Based on this record, the ALJ's decision to give reduced weight to Dr. Ahrens' opinions is supported by substantial evidence. In this regard, the ALJ pointed out inconsistencies between the doctor's opinions, the medical evidence, and plaintiff's testimony. The ALJ also noted that the doctor's opinions were presented in a "check box" form with no explanations. "ALJs are not bound by conclusory statements of doctors, particularly where they appear on 'check-box forms' and are unsupported by explanations citing detailed objective criteria and documentation."

*Laporte v. Commissioner of Social Security*, No. 1:15-cv-456, 2016 WL 5349072 at *7 (W.D. Mich. Sept. 26, 2016). Accordingly, plaintiff's claim of error is denied.

IV.     **CONCLUSION**

Accordingly, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate the vocational evidence to determine if other work exists in the national economy that plaintiff can perform. A judgment consistent with this opinion will be issued forthwith.


Dated:  September 18, 2019                     /s/ Ray Kent
                                               United States Magistrate Judge